UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RONALD P. JOHNSON, Administrator of the Estate of JAMES R. BULLOCK, Jr., Deceased, <br><br> Plaintiff, <br><br> v. <br><br> JET SUPPORT SERVICES, INC., <br><br> Defendant. | No. 18 C 6235 <br><br> Judge Jorge L. Alonso |

## MEMORANDUM OPINION AND ORDER

The Court previously dismissed with prejudice plaintiff's counts for promissory estoppel and unjust enrichment and dismissed without prejudice plaintiff's claim for breach of contract. Plaintiff, the executor of the estate of James R. Bullock, filed an amended complaint asserting: (1) that defendant breached a contract between defendant and the prior owner of an aircraft; and (2) that plaintiff has been assigned the right to sue for that breach of contract.[1] Defendant again moves to dismiss. For the reasons set forth below, the Court grants the motion to dismiss.

**I.    BACKGROUND**

The following facts are from plaintiff's[2] amended complaint, and the Court takes them as true.

---

[1] The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1). Plaintiff Ronald P. Johnson is the administrator for the estate of James R. Bullock, who was a citizen of North Carolina. (Am. Complt. ¶ 1). Thus, plaintiff is a citizen of North Carolina. 28 U.S.C. § 1332(c)(2). Defendant is a Delaware corporation with a principal place of business in Illinois. (Am. Complt. ¶ 2). Thus, defendant is a citizen of Delaware and Illinois. 28 U.S.C. § 1332(c)(1). The amount in controversy exceeds $75,000.00.

[2] The parties refer to Bullock, who passed away September 1, 2017, and to the administrator of his estate, collectively, as "plaintiff." The Court will do the same.

As of January 1, 2016, Gadinair, a company in France, owned a Cessna 560 Excel Jet (the "jet") that it wished to sell. It hired Bell Aviation to serve as its listing agent for the jet. Bell Aviation employed Charley Lloyd ("Lloyd"), who assisted with the sale. In early January 2016, plaintiff received from Bell Aviation a flyer about Gadinair's jet. Plaintiff and Lloyd began negotiating for the jet, which was covered by a maintenance contract between Gadinair and defendant Jet Support Services, Inc. ("JSSI").

*JSSI*

Defendant JSSI is a company that offers maintenance programs for aircraft. On or about February 27, 2012, JSSI and Gadinair entered into a contract (the "2/27/2012 Maintenance Agreement") for a maintenance program on the jet. The 2/27/2012 Maintenance Agreement states, in relevant part:

RECITALS:

A. JSSI is in the business of providing programs for the repair and maintenance of turbine engines as described in this Contract (the "Program"). All capitalized terms used herein, and not defined herein, shall have the meanings ascribed to them in Exhibit A attached hereto and made a part hereof.

B. The Client desires to obtain the benefits of the Program, and JSSI desires to provide the Program to the Client, subject to the terms and conditions of this Contract.

The parties agree as follows:

\* \* \*

**III. TRANSFER, TERMINATION AND CONTINUATION OF SERVICE**

(a) Term; Renewal Contract. The initial term of this Contract is sixty (60) months. Except in accord with the specific provisions of this Section III, this Contract is non-cancelable by either party. At the conclusion of each sixty (60) month period, a renewal contract subject to the then current JSSI terms and conditions may be issued to the Client as mutually agreed by the parties, with such agreement not to be unreasonably withheld, conditioned, or delayed. At the time of issuance of such renewal contract the Client must be in compliance with

all terms and conditions of this Contract, including, but not limited to, payment of Minimum Service Charges. The beginning Account Balance under such renewal contract shall be equal to the amount of the Account Balance at the conclusion of this Contract, calculated as described in Exhibit A.

(b) Transfer of Aircraft to Affiliate. In the event the Client determines to transfer the aircraft to an Affiliate during the term of the Contract, the Client shall provide written notice to JSSI at least ten (10) days prior to the date of such transfer. . . . If the Client is in full compliance with the terms and conditions of this Contract at the time of the proposed assignment, and the Affiliate's creditworthiness is acceptable to JSSI, then JSSI, the Client, and the Affiliate shall take all necessary steps to arrange for the assignment and assumption of all rights and obligations of Client under this Contract to such Affiliate. . . .

(c) Sale of Aircraft: New Contract with Purchaser. In the event the client determines to sell the Aircraft during the term of this Contract, the Client shall provide written notice to JSSI at least ten (10) days prior to the date of closing of such sale. Such notice shall include the name and address of the Purchaser, the estimated closing date, and any other information reasonably requested by JSSI. If the Client is in full compliance with the terms and conditions of this Contract at the time of sale, the Purchaser's creditworthiness is acceptable to JSSI, and the Purchaser desires to maintain enrollment in the Program, JSSI and the Client shall take all necessary steps to arrange for the execution and delivery of a new contract between JSSI and the Purchaser, subject to the then current JSSI terms and conditions. Such new contract shall be entered into on or before the closing date of such sale. The beginning Account Balance under such new contract shall be equal to the amount of the Account Balance at the conclusion of this Contract, calculated as described in Exhibit A. In addition, this Contract shall be terminated, and neither JSSI nor the Client shall have any further obligations under this Contract, effective as of the date JSSI and the Purchaser enter into the new contract.

(d) Sale of the Aircraft; Termination of Contract. In the event of a sale of the Aircraft to a Purchaser (which Purchaser shall not be an Affiliate of the Client) not desiring to participate in the Program, JSSI shall consent to termination of this Contract with the Client under the following terms:

> (i) The receipt by JSSI of any data and documents reasonably requested by JSSI . . .
> (ii) Full payment of all amounts due . . .
> (iii) Receipt by JSSI of evidence satisfactory to JSSI of the sale of the Aircraft; and
> (iv) Return of all equipment on loan to the Client hereunder.

(e) Early Termination; Certain Circumstances. In the event the Aircraft is damaged beyond economical repair or becomes unrecoverable because

of theft . . . The liability of the parties in further performance of this Contract shall be terminated effective as of the date of such damage or theft.

\* \* \*

(j) <u>Credit Towards Replacement Aircraft.</u> In the event (A) the Client sells the Aircraft and the Purchaser does not wish to enroll in the Program (as provided in <u>Subsection III(d)</u> above), or (B) this Contract is terminated because of damage or theft of the Aircraft (as provided in <u>Subsection III(e)</u> above), the Client shall have the rights set forth in this <u>Subsection III(j)</u>. If the Client elects to enroll a Replacement Aircraft in the Program and enter into a new contract covering such replacement Aircraft, the Client shall be eligible to apply the amount of its Credit under this Contract, calculated as described in <u>Exhibit A,</u> against either (1) the amount of the Pro Rata Elimination Fee, if any, due under the new contract for the Replacement Aircraft if the Replacement Aircraft is an In-Service Aircraft; or (2) the amount of monthly flight hour payments due under such new contract if the Replacement Aircraft is a New Aircraft. The Client's rights under this <u>Subsection III(j)</u> shall expire in the event that the Client does not enter into a new contract for a Replacement Aircraft within thirty-six (36) months from the date of the termination of this Contract pursuant to either <u>Subsection III(d)</u> or <u>(e)</u>, as applicable.

(k) <u>Early Termination; Rebate of Account Balance.</u> In the event that (i) the Client is the first party to enroll the Engine(s) on a JSSI program, (ii) the Client is in compliance with all terms and conditions of this Contract, including, but not limited to, payment of Minimum Service Charges, and (iii) an off-wing event has not yet been performed on the Engine under this Contract, the Client shall have the right to terminate this Contract by delivering written notice thereof to JSSI and the liability of the parties in further performance of this Contract shall be terminated effective as of the date of JSSI's receipt of such notice. In addition, within ninety (90) days of the effective date of such termination notice, JSSI shall pay to the Client an amount equal to seventy percent (70%) of the Account Balance, calculated as described in <u>Exhibit A</u>, as of the effective date of such termination.

**IV. <u>FEES AND OTHER CHARGES</u>.**

\* \* \*

(b) <u>Monthly Payment</u>. Each month during the term of this Contract, the Client shall make a monthly payment based upon an established Hourly Rate and the Flight Hours logged during the month, as well as an Administrative Fee, if applicable.

Not later than ten (10) days after the end of each month, the Client shall submit a report on-line using the JSSI website, providing accurate operational information

including the Aircraft total time and landings and Engine Operating Time and cycles for each Engine . . .

\* \* \*

    (i) <u>Transfer Fees</u>. In the event of a sale of the Aircraft, as described in <u>Subsection III(c)</u>, which results in the execution of a new contract with the Purchaser, a Transfer Fee shall be due and payable to JSSI as set forth on <u>Exhibit B</u>.

\* \* \*

V.     **<u>GENERAL PROVISIONS</u>**.

\* \* \*

    (c)     <u>Governing Law</u>. This Contract shall be governed by, and construed in accord with, the laws of the State of Illinois.

\* \* \*

    (g)     <u>Binding Effect; Assignment</u>. This Contract shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns. This Contract may not be assigned by the Client without the prior written consent of JSSI. JSSI shall be entitled to assign some or all of its rights and remedies hereunder without notice or prior consent of Client.

\* \* \*

**EXHIBIT A**
**DEFINED TERMS**

\* \* \*

2.     ACCOUNT BALANCE means the aggregate amount of payments to JSSI by the Client hereunder <u>less</u> the aggregate amount distributed as Management Fees, <u>times</u> not less than 75%, <u>less</u> the aggregate amount distributed for all maintenance and repair covered hereunder with the exception of Unscheduled Maintenance, <u>less</u> expenses specifically permitted under the Trust Agreement and allocated to this Contract, <u>less</u> Federal and State Income and other taxes allocated to this Contract, all in accord with the Trust Agreement, as determined by JSSI in its reasonable discretion from time to time. For the purposes of an On Condition Program, the aggregate amount distributed for Unscheduled Maintenance shall mean the aggregate amount distributed for Unanticipated Failure(s).

\* \* \*

29.     CREDIT means the aggregate amount of payments to JSSI by the Client hereunder <u>less</u> the aggregate amount distributed as Management Fees, <u>times</u> not less than 75%, <u>less</u> the aggregate amount distributed for all maintenance and repair covered hereunder with the exception of Unscheduled Maintenance, <u>less</u> expenses specifically permitted under the Trust Agreement and allocated to this Contract, <u>less</u> Federal and State income and other taxes allocated to this Contract, all in accord with the Trust Agreement, as determined by JSSI in its reasonable discretion from time to time. For the purposes of an On Condition Program, the aggregate amount distributed for Unscheduled Maintenance shall mean the aggregate amount distributed for Unanticipated Failure(s).

(Am. Complt. Exh. C at 1, 8-10, 12-13, 15, 16, Exh. A/Docket 22-3 at 5, 12-14, 16-17, 19, 20, 23-24). Exhibit B lists an hourly rate of $197.06 per engine and a transfer fee of $2,500.00. (Am. Complt. Exh. C at Exh. B/Docket 22-3 at 29).

*Plaintiff agrees to purchase jet from Gadinair*

Plaintiff and Gadinair reached an agreement for the sale of the jet from Gadinair to plaintiff. Among other things, plaintiff and Gadinair agreed "[a]ll airframe and engine maintenance programs applicable to the Aircraft (including JSSI) that are still in effect and by their terms are assignable shall be assigned to the Purchaser at closing and shall be fully paid up to and current as of the date of delivery." (Am. Complt. ¶ 15). Plaintiff and Gadinair set April 18, 2016 as the closing date for the sale of the jet.

On April 7, 2016, defendant emailed Gadinair and requested that Gadinair execute the Notification of Aircraft Sale form. Gadinair did so the same day, and plaintiff attached to the amended complaint the Notification of Aircraft Sale form executed by Sebastien Longerinas, a Gadinair officer. (Am. Complt. Exh. E/Docket 22-5). The Notification of Aircraft Sale form says, among other things:

> **The terms of the Contract require that the Customer provides written notice to JSSI in the event of the sale of the Aircraft. Please complete this document, sign where indicated below, and return a fully executed copy of this JSSI Notification of Aircraft Sale to Mirai Shantilai via email at …**
>
> Reference is made to that certain JSSI [TYPE] Maintenance Program Contract #JSSI0004059 (the "Contract") dated as of February 27th, 2012, between Gadinair S.a.r.L (the "Client") and JET SUPPORT SERVICES, INC. ("JSSI"). Any capitalized term used in this Notification of Aircraft Sale (this "Notification") but not defined in this Notification shall have the meaning ascribed to it in the Contract. This Notification does not amend or modify the Contract.

(Am. Complt. Exh. E/Docket 22-5). The Notification of Aircraft Sale form goes on to say:

6

> If the Aircraft was sold <u>with</u> the JSSI Program, the Client's right under the Contract will terminate effective as of the date of sale of the Aircraft, and JSSI will work with the Purchaser to transfer the JSSI Program coverage, which coverage will be subject to JSSI's then-current terms and conditions.
>
> If the Aircraft was sold <u>without</u> the JSSI Program, the Client will retain a Credit right, if applicable, to be used towards a Replacement Aircraft as set forth in the Contract.

(Am. Complt. Exh. E/Docket 22-5). The Notification of Aircraft Sale form contains boxes that could be checked to indicate whether the plane was sold with or without the JSSI program, and the box for sold "with" the program is checked. The form is not dated, but plaintiff alleges Gadinair sent it on April 7, 2016.

The sale of the jet closed on April 18, 2016. Prior to the closing date, JSSI required Gadinair to pay an arrearage of $125,000.00 to JSSI. After the sale closed, plaintiff learned that in order to access the funds under the 2/27/2012 Maintenance Agreement, he would have to enter a new five-year maintenance agreement with JSSI. Plaintiff never entered a new contract with JSSI. As of March 14, 2017, the balance under the 2/27/2012 Maintenance Agreement was $495,077.90. JSSI has not paid any portion of that balance to plaintiff or Gadinair.

When plaintiff filed the original complaint, he asserted that the 2/27/2012 Maintenance Agreement had been assigned to him. The Court concluded that assignment was barred by the anti-assignment provision and, accordingly, that plaintiff had failed to state a claim for breach of contract. (The Court also dismissed with prejudice plaintiff's claims for promissory estoppel and unjust enrichment.)

In the amended complaint, plaintiff alleges that after the Court dismissed the original complaint, plaintiff and Gadinair entered an additional assignment agreement under which Gadinair assigned to plaintiff its rights to sue for breach of the 2/27/2012 Maintenance Agreement. Specifically, the assignment provides:

7

> Seller hereby assigns ANY AND ALL rights, title, interest, and ownership in any *claims* that Seller has or may have against JSSI under the JSSI Contract and authorizes Purchaser, at Purchaser's own expense, to pursue such claims against JSSI in litigation or otherwise, in Purchaser's own name pursuant to this Agreement.

(Am. Complt. Exh. J at 1/Docket 22-10 at 2) (emphasis added).

Plaintiff goes on to assert that JSSI breached its contact with Gadinair. Plaintiff, as assignee to a chose in action, seeks relief for that breach. Specifically, plaintiff alleges "Gadinair delivered written notice to JSSI that it was terminating the [2/27/2012 Maintenance Agreement] by delivering the signed Notification [of Sale of Aircraft form] to JSSI prior to the Closing Date." (Am. Complt. ¶¶ 43, 18). Plaintiff alleges that, pursuant to Section III(k) of the 2/27/2012 Maintenance Agreement, "JSSI was obligated to pay Gadinair, within ninety (90) days of the termination of the Contract, an amount equal to seventy percent (70%) of the Account Balance." (Am. Complt. ¶ 44). Plaintiff alleges Gadinair was the first party to enroll the engines in a JSSI Program, Gadinair was in compliance and no off-wing events had been performed on the jet before the contract terminated.

Defendant moves to dismiss.

## II.    STANDARD ON A MOTION TO DISMISS

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not provide detailed factual allegations, but mere conclusions and a "formulaic recitation of the elements of a cause of action" will not

suffice. *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a claim must be plausible. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Allegations that are as consistent with lawful conduct as they are with unlawful conduct are not sufficient; rather, plaintiffs must include allegations that "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

In considering a motion to dismiss, the Court accepts as true the factual allegations in the complaint and draws permissible inferences in favor of the plaintiff. *Boucher v. Finance Syst. of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018). Conclusory allegations "are not entitled to be assumed true," nor are legal conclusions. *Iqbal*, 556 U.S. at 680 & 681 (noting that a "legal conclusion" was "not entitled to the assumption of truth[;]" and rejecting, as conclusory, allegations that "'petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement"). The notice-pleading rule "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-679.

On a motion to dismiss, the Court does not consider matters outside the pleadings. Fed.R.Civ.P. 12(d). The pleadings include any "written instrument that is an exhibit to a pleading." Fed.R.Civ.P. 10(c). Where a plaintiff alleges a breach of contract, a district court "may determine [the contract's] meaning as a matter of law" if "the contract is unambiguous." *McWane, Inc. v. Crow Chi. Indus., Inc.*, 224 F.3d 582, 584 (7th Cir. 2000). An "unambiguous contract controls over contrary allegations in the plaintiff's complaint." *McWane*, 224 F.3d at 584.

## III. DISCUSSION

When the Court dismissed without prejudice plaintiff's claim that defendant had breached the 2/27/2012 Maintenance Agreement (which, according to plaintiff, had been

assigned to plaintiff), the Court granted leave to file an amended complaint. The Court did not grant leave to file a supplemental complaint, but plaintiff's amended complaint is, technically, a supplemental complaint. Fed.R.Civ.P. 15(d) ("On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense."). Plaintiff's new complaint is a supplemental complaint, because it is based on a transaction (namely, an assignment signed in July 2019) that occurred after plaintiff filed his original complaint. Nonetheless, defendant does not object, so it is just to allow the supplemental pleading and to proceed to the question of whether it states a claim.

In Count I, plaintiff attempts to state a claim for breach of the 2/27/2012 Maintenance Agreement. Plaintiff's original theory (which the Court rejected) was that the 2/27/2012 Maintenance Agreement had been assigned to plaintiff, after which JSSI breached it. Plaintiff's new theory is that JSSI breached the 2/27/2012 Maintenance Agreement and that, after the breach, Gadinair assigned to plaintiff its right to sue on the breach. *See, e.g., Mutual Assignment and Indemnification Co. v. Lind-Waldock & Co., LLC*, 364 F.3d 858, 861 (7th Cir. 2004) ("[I]f a contract between Placido Domingo and the Lyric Opera contains an anti-assignment clause, and Domingo decides that he is too pooped to participate, he can't send Neil Shicoff in his stead . . . But if Domingo sings, and the opera does not pay, he can transfer to Shicoff (or anyone else) the right to collect.").

Plaintiff has adequately alleged that Gadinair assigned to plaintiff Gadinair's right to sue for breach of contract. In order to state a claim, though, plaintiff must also allege that JSSI breached the contract with Gadinair *before* the assignment. This is where plaintiff's claim fails.

10

Plaintiff alleges that when Gadinair sent the Notification of Aircraft Sale form to JSSI on April 7, 2016, it was notifying JSSI that it was terminating the 2/27/2012 Maintenance Agreement, thereby triggering Section III(k).[3] Section III(k) provides:

> (k) <u>Early Termination; Rebate of Account Balance.</u>  In the event that (i) the Client is the first party to enroll the Engine(s) on a JSSI program, (ii) the Client is in compliance with all terms and conditions of this Contract, including, but not limited to, payment of Minimum Service Charges, and (iii) an off-wing event has not yet been performed on the Engine under this Contract, *the Client shall have the right to terminate this Contract by delivering written notice thereof to JSSI* and the liability of the parties in further performance of *this Contract shall be terminated effective as of the date of JSSI's receipt of such notice*.  In addition, within *ninety (90) days of the effective date of such termination notice, JSSI shall pay to the Client an amount equal to seventy percent (70%) of the Account Balance*, calculated as described in <u>Exhibit A</u>, as of the effective date of such termination.

(2/27/2012 Maintenance Agreement at 12-13/Docket 22-3 at 16-17). Thus, under certain conditions, Gadinair could notify JSSI that it was terminating the 2/27/2012 Maintenance Agreement, and the termination would be effective the same day JSSI received the written notice. The written notice would also trigger JSSI's obligation to return 70% of the Account Balance within 90 days of the written notice of termination.

Plaintiff's conclusory allegation that the Notification of Aircraft Sale form constituted written notice of termination of the contract under Section III(K) is belied by the Notification of Aircraft Sale form itself and by plaintiff's other allegations.[4] Nothing in the language of the

---

[3] Plaintiff does not allege (or even argue) that Gadinair provided any other notice (besides the Notification of Aircraft Sale form) of termination of the 2/27/2012 Maintenance Agreement.

[4] The Court need not credit plaintiff's legal conclusion in ¶ 43 (see also ¶ 18) of his amended complaint that the Notification of Aircraft Sale form constituted written notice of termination for purposes of Section III(k). *Iqbal*, 556 U.S. at 680 (a "legal conclusion" is "not entitled to the assumption of truth[.]" Furthermore, the Court need not ignore the plain language of the Notification of Aircraft Sale form that plaintiff attached to his complaint and that he relies on to support his claim. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) ("when a plaintiff attaches to the complaint a document that qualifies as a written instrument, and her

11

Notification of Aircraft Sale form suggests Gadinair, by sending it, was notifying JSSI that it was terminating the 2/27/2012 Maintenance Agreement effective April 7, 2016 (the day plaintiff alleges the form was sent) and triggering a rebate under Section III(k). The form is not labeled "Notification of contract termination," and termination on April 7, 2016 would have been inconsistent with plaintiff's allegation that the contract for purchase of the jet included assignment of the 2/27/2012 Maintenance Agreement. (Am. Complt. ¶15). Rather, the form is labeled "Notification of Aircraft *Sale*." (Exh. E at 2/Docket 22-5 at 4) (emphasis added). The Notification of Aircraft Sale form gives every indication of providing notice to JSSI that Gadinair was selling the jet, not that it was terminating the contract that day. The Notification of Aircraft Sale form explicitly states that JSSI requires written notice "in the event of the sale of the Aircraft." (Am. Complt. Exh. 5 at 3/Docket 22-5 at 3). It explicitly states that "[i]f the Aircraft was sold with the JSSI Program . . . JSSI will work with the Purchaser to transfer the JSSI Program coverage" and that "[i]f the Aircraft was sold without the JSSI Program . . . the Client will retain a Credit right, if applicable, to be used towards a Replacement Aircraft as set forth in the Contract. (Am. Complt. Exh. 5 at 4/Docket 22-5 at 4). Gadinair checked the box for sale with the JSSI program (Am. Complt. Exh. 5 at 4/Docket 22-5 at 4) and provided contact information for the purchaser (Am. Complt. Exh. 5 at 3/Docket 22-5 at 3).

      In sum, plaintiff has not plausibly alleged that Gadinair ever provided written notice to JSSI that Gadinair was terminating the 2/27/2012 Maintenance Agreement. Thus, JSSI did not breach the 2/27/2012 Maintenance Agreement by not paying Gadinair 70% of the Account Balance under Section III(k). Rather, plaintiff's allegations and the plain language of the

---

complaint references and relies upon that document in asserting her claim, the contents of that document become part of the complaint and may be considered as such when the court decides a motion attacking the sufficiency of the complaint").

2/27/2012 Maintenance Agreement make clear that when Gadinair sent the Notification of Aircraft Sale form, it triggered Section III(c) or III(d), depending on whether the purchaser wanted to enter a new contract with JSSI.

Section III(c) provided:

> (c) <u>Sale of Aircraft: New Contract with Purchaser</u>. *In the event the client determines to sell the Aircraft during the term of this Contract*, the Client shall provide written notice to JSSI at least ten (10) days prior to the date of closing of such sale. Such notice shall include the name and address of the Purchaser, the estimated closing date, and any other information reasonably requested by JSSI. If the Client is in full compliance with the terms and conditions of this Contract at the time of sale, the Purchaser's creditworthiness is acceptable to JSSI, *and the Purchaser desires to maintain enrollment in the Program, JSSI and the Client shall take all necessary steps to arrange for the execution and delivery of a new contract between JSSI and the Purchaser, subject to the then current JSSI terms and conditions.* Such new contract shall be entered into on or before the closing date of such sale. *The beginning Account Balance under such new contract shall be equal to the amount of the Account Balance at the conclusion of this Contract, calculated as described in <u>Exhibit A</u>*. In addition, this Contract shall be terminated, and neither JSSI nor the Client shall have any further obligations under the Contract.

(2/27/2012 Maintenance Agreement at 9/Docket 22-3 at 13) (emphasis added). By its plain language, the 2/27/2012 Maintenance Agreement provides a method by which plaintiff, as purchaser of the jet from Gadinair, could have taken advantage of Gadinair's Account Balance. Specifically, if plaintiff executed a new contract with JSSI, then "the Account Balance under such new contract [would] be equal to the amount of the Account Balance at the conclusion" of the 2/27/2012 Maintenance Agreement. Plaintiff, however, alleges that he did not enter a new contract.

> Plaintiff seems to recognize this basic point, because he argues:
>
> The Court must now interpret what happens in a situation where the seller intends to transfer the Contract with the Aircraft when it is sold, the seller uses the Notification form provided by JSSI, the seller checks the box it believes is the most appropriate selection given the intended result, ***but*** the buyer and JSSI do not ultimately enter into a new contract.

13

(Plf's Brief at 6/Docket 30 at 7). The answer to the question plaintiff poses is that Section III(d) applies. (Plaintiff previously recognized this answer. In response to defendant's motion to dismiss the original complaint, plaintiff argued, "Section III(d), not Section III(c) governs the precise factual situation alleged in the Complaint: the sale of the Aircraft by Gadinair to a new buyer not desiring to participate in the Program." (Plf's 12/3/18 Brief at 10/ Docket 12 at 11). Plaintiff was correct on 12/3/18.) Section III(d) provides:

> (d) <u>Sale of the Aircraft; Termination of Contract</u>. *In the event of a sale of the Aircraft to a Purchaser* (which Purchaser shall not be an Affiliate of the Client) *not desiring to participate in the Program*, JSSI shall consent to termination of this Contract with the Client under the following terms:
>
>> (i) The receipt by JSSI of any data and documents reasonably requested by JSSI . . .
>> (ii) Full payment of all amounts due . . .
>> (iii) Receipt by JSSI of evidence satisfactory to JSSI of the sale of the Aircraft; and
>> (iv) Return of all equipment on loan to the Client hereunder.

(2/27/2012 Maintenance Agreement at 10/Docket 22-3 at 14). It is clear this section gives Gadinair a right to terminate the contract upon sale of the jet to a purchaser who did not wish to participate in a JSSI program. Plaintiff worries that this leaves JSSI with a windfall, but that is not so. A subsequent provision sets out what happens to the Account Balance if the purchaser does not wish to continue with the JSSI program. Specifically,

> (j) <u>Credit Towards Replacement Aircraft.</u> *In the event (A) the Client sells the Aircraft and the Purchaser does not wish to enroll in the Program (as provided in <u>Subsection III(d)</u> above)*, or (B) this Contract is terminated because of damage or theft of the Aircraft (as provided in <u>Subsection III(e)</u> above), *the Client shall have the rights set forth in this <u>Subsection III(j)</u>. If the Client elects to enroll a Replacement Aircraft in the Program and enter into a new contract covering such replacement Aircraft, the Client shall be eligible to apply the amount of its Credit under this Contract, calculated as described in <u>Exhibit A</u>,* against either (1) the amount of the Pro Rata Elimination Fee, if any, due under the new contract for the Replacement Aircraft if the Replacement Aircraft is an In-Service Aircraft; or (2) the amount of monthly flight hour payments due under such new contract if

14

> the Replacement Aircraft is a New Aircraft. The Client's rights under this Subsection III(j) shall expire in the event that the Client does not enter into a new contract for a Replacement Aircraft within thirty-six (36) months from the date of the termination of this Contract pursuant to either Subsection III(d) or (e), as applicable.

(2/27/2012 Maintenance Agreement at 12/Docket 22-3 at 16) (emphasis added). (Note that the 2/27/2012 Maintenance Agreement defines Credit the same way it defines Account Balance. (2/27/2012 Maintenance Agreement at Exh. A/Docket 22-3 at 23-24).) Thus, in the event the purchaser does not wish to continue in the JSSI Program (which plaintiff alleges, and thus admits, is what happened here), the 2/27/2012 Maintenance Agreement gave Gadinair a Credit (in the same amount as the Account Balance) for any replacement aircraft it enrolled in JSSI within the following three years.[5]

The 2/27/2012 Maintenance Agreement is unambiguous, and defendant did not breach it by failing to pay Gadinair 70% of the Account Balance. Amendment would be futile. Accordingly, defendant's motion to dismiss is granted, and Count I is dismissed with prejudice.

## IV. CONCLUSION

For the reasons set forth above, the Court grants defendant's motion to dismiss [26]. The Court dismisses Count I with prejudice. Civil case terminated.

SO ORDERED.                                      ENTERED:   April 21, 2020

_____
JORGE L. ALONSO
United States District Judge

---

[5] Nowhere does plaintiff suggest he seeks to allege JSSI breached the 2/27/2012 Maintenance Agreement by failing to allow Gadinair to apply the credit to a replacement aircraft.

15